

# Missouri Court of Appeals
## Southern District

### In Division

QWENTEN DEON AMLIN,      )
                                     )

     Movant-Appellant,      )
                                     )

v.                               )     No. SD37647
                                     )

STATE OF MISSOURI,      )     **Filed: September 19, 2023**
                                     )

     Respondent-Respondent.      )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

#### Honorable David C. Jones

**<u>AFFIRMED</u>**

Qwenten Deon Amlin ("Movant") appeals the judgment of the circuit court ("the motion court") that denied his amended motion for postconviction relief under Rule 29.15 after an evidentiary hearing.[1] Defendant raises four ineffective assistance of counsel ("IAC") claims (points 1, 2, 4, and 5), along with his Point-3 claim that the motion court failed to make findings and conclusions of law as required by Rule 29.15(j). Finding no merit in any of Movant's points, we affirm the denial of post-conviction relief.

---

[1] All rule references are to Missouri Court Rules (2023). We have independently verified the timeliness of the original and amended post-conviction motions. *See **Hatmon v. State**,* 661 S.W.3d 760, 766 (Mo. banc 2023); ***Moore v. State**,* 458 S.W.3d 822, 825-26 (Mo. banc 2015).

## Factual and Procedural Background[2]

We affirmed Movant's conviction on direct appeal in an unpublished order and statement. *State v. Amlin*, No. SD35993, slip op. (Mo. App. S.D. May 21, 2020). We borrow facts from that statement without further attribution.

Shawn Markin ("trial counsel Markin") and Hannah Kahn ("trial counsel Kahn") (collectively, "trial counsel") represented Movant at trial. Victim and Movant both testified at trial, and there was no dispute that they had a sexual encounter. The only issue for the jury to decide was whether the encounter was consensual. The jury found that it was not, and it found Movant guilty of first-degree rape, armed criminal action, two counts of first-degree sodomy, and unlawful possession of a firearm. Movant was subsequently sentenced to serve a total of 105 years in prison. We will recite additional evidence below as necessary to address Movant's points on appeal.

## Standard of Review and Governing Law

> This Court reviews the denial of post-conviction relief to determine whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k). . . . This Court defers to the motion court's superior opportunity to judge the credibility of witnesses.
>
> To be entitled to post-conviction relief for [IAC], a movant must show by a preponderance of the evidence his or her trial counsel failed to meet the *Strickland* test to prove his or her claims. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, Movant must demonstrate: (1) trial counsel failed to exercise the level of skill and diligence reasonably competent trial counsel would in a similar situation, and (2) he was prejudiced by that failure. *Id.* at 687.

*Sours v. State*, 580 S.W.3d 618, 622-23 (Mo. App. S.D. 2019) (citing *Shockley v. State*, 579 S.W.3d 881, 892-93 (Mo. banc 2019)) (internal quotations and citations omitted).

---

[2] On appeal from a motion court's ruling on a Rule 29.15 motion, we view the evidence in the light most favorable to the jury's verdict. *Sousley v. State*, No. WD 85175, 2023 WL 4188227, at *1 n.1 (Mo. App. W.D. June 27, 2023).

**Analysis**

*Point 1 – Alleged IAC for eliciting testimony from*
*Movant that he had invoked his right to remain silent*

Movant's first point claims the motion court clearly erred when it found that trial counsel was not ineffective for eliciting testimony from Movant that he had "invoked his right[] [to remain silent] and terminated the interrogation" when law enforcement questioned him about this incident. We disagree.

During Movant's direct examination at trial, the following exchange occurred between Movant and trial counsel Markin:

Q.    Then, in November of, I believe, 2016, did you have -- were you contacted by police?

A.    Yes, sir.

Q.    And was that Detective Umbarger?

A.    Yes, sir. It was in December.

Q.    December? Okay. And did she read off your Miranda rights form?

A.    Yes, sir.

Q.    Did you understand those rights?

A.    Yes, sir, I did.

Q.    And you understood you could invoke those at any time?

A.    Yes, sir.

Q.    And did you wind up invoking your constitutionally protected rights?

[Prosecutor]: Objection. Relevance.

THE COURT: I'll allow it.

3

Q.      (By [trial counsel] Markin) You can answer the question.

A.      Repeat the question.

Q.      And did you invoke, at some point in time, your constitutionally protected rights?

A.      Yes, sir.

Q.      And that was to -- you asked for an attorney; is that correct?

A.      Yes, sir.  During the middle of the interview.

Q.      And did you understand -- and why did you do that?

A.      I didn't know what it was about.

During closing argument, the State argued to the jury, without objection, that Movant's invocation of his right to remain silent was evidence of his consciousness of guilt. Movant argues that trial counsel Markin acted unreasonably in eliciting that testimony from Movant because it "undercut [Movant]'s credibility in this close case in which [Movant]'s credibility was paramount to the defense."

In denying Movant's request for relief on this issue, the motion court stated as follows:

During the hearing . . . , [trial counsel] acknowledged that Movant initially told the detective that he was not in the area or location at the time the rape occurred.  [Trial] counsel further acknowledged that DNA evidence was received showing Movant's DNA present at the crime scene.

[Trial c]ounsel also acknowledged that they would have to explain why Movant's defense that it was a consensual encounter should be believed since Movant previously stated he was not in the area where the rape occurred.  Additionally, Movant explained why he invoked his right to counsel by stating that he "didn't know what it was about."

Trial counsel [Markin] was attempting to explain why [Movant's] story had drastically changed from not being present to arguing it was a

4

consensual encounter. Thus, trial counsel was placed in a difficult position because of the statements Movant had initially made to the detective and was attempting to find a way to explain the change in statements. As such, trial counsel's decision to elicit the contested testimony in question was sound trial strategy and there has been no prejudice demonstrated.

The motion court's findings on this issue are not clearly erroneous.

Trial counsel were faced with the task of explaining to the jury why Movant made inconsistent statements to law enforcement about his presence at the scene, first stating that he was not there at all, then stating that he was there only after law enforcement found his DNA at the crime scene. Trial counsel made the strategic decision to explain this inconsistency to the jury by stating that Movant did not know what police were questioning him about, thus Movant's invocation of his right to counsel. Such strategic trial decisions based upon trial counsel's investigation of the law and facts are "virtually unchallengeable." *Binion v. State*, 649 S.W.3d 359, 365 (Mo. App. E.D. 2022) (quoting *Shockley*, 579 S.W.3d at 892).

Because Movant has failed to demonstrate that trial counsel's strategy was unreasonable, the motion court did not clearly err in denying Movant relief. Point 1 is denied.

*Point 2 – Alleged IAC for failing to request a lesser-included jury instruction*

Movant's second point claims the motion court clearly erred when it found that trial counsel was not ineffective for failing to request a jury instruction on the lesser-included offense of second-degree sodomy and admit guilt to that lesser-included offense as an effort to bolster Movant's credibility. We disagree.

> To specifically establish [IAC] for failure to request a lesser-included offense instruction, [Movant] must show that the evidence would have required submission of a lesser-included offense instruction had one been requested, that the decision not to request the instruction was not reasonable

5

trial strategy, and that he was thereby prejudiced. *Jackson v. State*, 205 S.W.3d 282, 285 (Mo.App. E.D.2006). "An objectively reasonable choice not to submit an available instruction does not constitute [IAC]." *Love v. State*, 670 S.W.2d 499, 502 (Mo. banc 1984). "'It is a tactical decision usually based on the belief—often a reasonable one—that the jury may convict of the lesser offense, if submitted, rather than render a not guilty verdict on the higher offense if the lesser is not submitted.'" *Neal v. State*, 99 S.W.3d 571, 576 (Mo.App. S.D.2003) (quoting *State v. Olson*, 636 S.W.2d 318, 322 (Mo. banc 1982), overruled on other grounds by *State v. Santillan*, 948 S.W.2d 574, 576 (Mo. banc 1997)).

*Oplinger v. State*, 350 S.W.3d 474, 477 (Mo. App. S.D. 2011). The decision not to request the lesser-included offense is presumed to be a reasonable trial strategy. *See Jones v. State*, 514 S.W.3d 72, 80 (Mo. App. E.D. 2017).

At the evidentiary hearing, trial counsel Markin testified that Movant maintained his innocence and wanted an "all or nothing" defense. The motion court found trial counsel Markin's testimony to be credible and found that the decision to not request a lesser-included instruction was "sound [trial strategy,] given the facts of the case." Moreover, the motion court explicitly found that Movant was not credible when he testified that he would have preferred admitting guilt to a lesser-included offense than the all-or-nothing defense presented at trial. Such credibility determinations are solely within the province of the motion court. *Anderson v. State*, 564 S.W.3d 592, 608 (Mo. banc 2018) (reviewing court "will not challenge the motion court's [credibility] determination . . . as it could make the best observation") (internal citation omitted).

Trial counsel is not ineffective for failing to request a lesser-included instruction when to request it would be inconsistent with the defense presented at trial, as "[c]ounsel will not be deemed ineffective 'for seeking to employ the best defense for [his or her] client by not offering the jury a middle ground for conviction.'" *Jones*, 514 S.W.3d at 82 (quoting *Jackson v. State*, 205 S.W.3d 282, 286 (Mo. App. E.D. 2006)). Point 2 is denied.

6

*Points 3 & 4 – Alleged IAC for eliciting statements from a witness
who did not testify at trial, and that the motion court failed
to make findings and conclusions on this claim*

Defendant's fourth point claims that trial counsel provided IAC when they "elicited testimony, failed to move *in limine* to restrict, and failed to object to, testimony about Brian Archer's [("Potential Witness")] statements that corroborated aspects of [Victim]'s testimony" when they knew that Potential Witness was not going to testify at trial.[3] Point 3 claims that the motion court failed to make findings of fact and conclusions of law on that issue. Again, we disagree.

As to Point 3, it is refuted by the record. The motion court did issue findings of fact and conclusions of law on this issue, which stated:

> At the PCR hearing, trial counsel [Markin] testified that he did not elicit the specific comment from [Potential Witness,] confirming that [Victim] told [Potential Witness] "she'd just been raped." The transcript confirms that was a nonresponsive answer to the question asked by [trial counsel] Markin.
>
> Additionally, [trial counsel] Markin testified that he did not then object or request the Court to instruct the jury to disregard the answer because the statement was already before the jury and would only look worse for Movant. This is sound trial strategy by an experienced trial attorney who recognized that an objection to the answer at that point could do more harm than good. Such a decision is well within the latitude afforded trial counsel and does not constitute [IAC].

Point 3 fails.

As to Point 4, first, even if trial counsel had presented a motion *in limine* aimed at keeping out any out-of-court statements made by Potential Witness, it would not have protected Movant because neither trial counsel nor the State elicited the testimony. Instead,

---

[3] We note that this point is multifarious in that it presents three different claims of alleged IAC in a single point. Because the claims are easily understood and refuted, we exercise our discretion to review the point *ex gratia*.

Potential Witness's statements came via a non-responsive answer to trial counsel Markin's question.[4]

More importantly, Point 4 fails to identify what out-of-court "statements" Potential Witness allegedly made. *See* **State v. Seaton**, 628 S.W.3d 424, 430 (Mo. App. W.D. 2021) (issues raised in the argument portion of a brief that exceed the scope of the point relied on are not preserved for review under Rule 84.04(d)(1)).

Regardless, the motion court's findings are not clearly erroneous as the motion court credited trial counsel Markin's testimony and found that it was reasonable for trial counsel Markin to decide not to highlight the testimony by objecting to it or asking the court to strike it from the record. *See* **Deck v. State**, 381 S.W.3d 339, 357 (Mo. banc 2012) (defense counsel exercised a reasonable strategy to not "highlight" an inappropriate statement made by the prosecutor). Here, Movant has failed to overcome the presumption that trial counsel's failure to object was an exercise of reasonable trial strategy.

Point 4 is also denied.

*Point 5 – Alleged IAC for failing to call trial counsel Kahn as a witness*

Point 5 claims:

> The motion court clearly erred . . . when it found trial counsel were not ineffective when they failed to call [trial counsel] Kahn, as a witness to testify she did not see [Movant] make a throat-slashing gesture toward [Victim] and [Movant] had been itching his face, in that . . . [Movant's] testimony that he did not make the throat slashing gesture did not cure the failure to call [trial counsel] Kahn as [a] witness with respect to both performance and prejudice.

We disagree.

---

[4] In cross-examining a Springfield police officer, trial counsel Markin asked the officer if Potential Witness told the officer that he had picked up Victim in his car on the night in question. The officer answered, "Yes" (an answer that was responsive to the question asked). The officer then volunteered that Victim "got in [Potential Witness's] vehicle and said that she just got raped, and then they checked the area to try to locate the suspect" (a remark that was *not* responsive to the question asked).

To prove ineffective assistance of counsel for failure to call certain witnesses at trial, Movant must establish the witnesses' testimony would have produced a viable defense. *Collings* [*v. State*], 543 S.W.3d [1,] at 18 [(Mo. banc 2018)]. "When defense counsel believes a witness' testimony would not unequivocally support his [or her] client's position, it is a matter of trial strategy not to call him [or her], and the failure to call such witness does not constitute ineffective assistance of counsel." *Winfield v. State*, 93 S.W.3d 732, 739 (Mo. banc 2002).

*Shockley*, 579 S.W.3d at 910.

After a recess, the following discussion occurred outside the hearing of the jury:

| | |
|---|---|
| [PROSECUTOR]: | Your Honor, [Victim] just got our attention through the victim/witness advocate. We went out in the hall to speak with her. [Victim] is crying full tears, extremely upset. She tells myself and [the assistant prosecutor] -- and had told the victim/witness advocate before -- that the second that the jury was basically coming into the courtroom as she was sitting down -- or as she was sitting down to testify, right before we began asking her questions, [Movant] made some type of throat-slashing motion towards [Victim] and then continued to stare at [her] during the entirety of her testimony. |
| | I have spoken with [Victim]. I believe every single word she said. She is extremely upset. And I wish for us to recall her and have her testify to that. [Movant] threatening her while she's testifying at his rape trial is clearly relevant in this case, and I believe the Court should allow that testimony. |
| THE COURT: | I'm going to allow it over [trial counsel's] objection. |
| [Trial counsel Markin]: | Yes, Judge. I mean, I -- |
| THE COURT: | You can cross [Victim] on it. |
| [Trial counsel Markin]: | Absolutely. I mean, I didn't see anything -- |
| THE COURT: | I didn't either. |

| [Trial counsel Markin]: | -- of that nature. I was looking at [Victim] and taking notes. I have no idea if the jury saw it or not. I have no way to impeach her on it either, Judge. |
|---|---|
| THE COURT: | I don't know. And [Movant] may be doing what he's just doing right now. |
| [Trial counsel Markin]: | I noticed [Movant] was rubbing his cheek and stuff. |
| THE COURT: | Well, no, he was going like this (indicated) just now when [the prosecutor] was talking. So some people might interpret that as slashing your throat.<br><br>I'm going to allow you to call [Movant]. I'll show it over your objection. You can have him testify to the contrary if he wants to explain that he was just -- when he was doing this (indicated), was not -- see, he's still doing it. |
| [Trial counsel Markin]: | Right. And I know -- |
| THE COURT: | Maybe he should stop doing it because you're not helping your case but --<br><br>All right. Get [Victim] back in. Line up the jury. |

After the jury returned to the courtroom, Victim resumed the stand and testified that Movant had made a slashing motion across his throat and shook his head "no" at her as she was testifying.

When Movant testified, he said that he had not made any threatening gestures toward Victim during the trial. He said that he had razor burn, and his face and neck had been itching all day.

10

Trial counsel wanted to call court personnel to counter Victim's testimony, but the only person who could affirmatively testify that Movant had not made a throat-slashing gesture was Movant's second-chair trial counsel, trial counsel Kahn. The court stated that it would not allow trial counsel Kahn to testify on this issue and then return to sitting at counsel table. The court allowed trial counsel Markin to make an offer of proof as to what trial counsel Kahn would have testified to.

In her offer of proof, trial counsel Kahn testified that she had not seen Movant make any kind of threatening motions across his neck. She testified that she had seen Movant only scratching his neck, and rubbing his chin with a pen.

The findings on this issue by the motion court are as follows:

> The Court finds it to be reasonable trial strategy to not call [trial counsel] Kahn as a witness under these facts. [Trial counsel] testified that they were concerned that [trial counsel] Kahn would not later be allowed to be seated at counsel table during closing arguments if she testified as a witness. Even if [trial counsel] Kahn would have been able to remain seated at counsel table, [trial counsel] Markin and [trial counsel] Kahn both testified during the evidentiary hearing that a jury could find [trial counsel Kahn's] testimony to be biased given that she had been representing Movant and seated next to him during the entire trial. The Court further finds no prejudice resulted because Movant testified himself that he had razor burn and that is why he had been itching his face during the trial.

Trial counsel's concerns about trial counsel Kahn's not being allowed to return to counsel table, and the impression that might leave on the jury, were legitimate concerns. Further, trial counsel Kahn's testimony did not provide Movant with a defense to the charges, and all she could say was that she didn't see Movant making any such movement. Movant affirmatively testified that he had not made any threatening gestures toward Victim. Under these circumstances, Movant has failed his burden to prove that the ruling of the motion court was clearly erroneous.

11

Point five is also denied, and the denial of post-conviction relief is affirmed.

DON E. BURRELL, J. – OPINION AUTHOR

JACK A. L. GOODMAN, J. – CONCURS

GINGER K. GOOCH, J. – CONCURS